**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UNI-MARTS, LLC, <u>et al.</u>, | ) | Case No. 08-11037  (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| | ) | |
| JNA-1 CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 08-51863  (MFW) |
| | ) | |
| UNI-MARTS, LLC and | ) | |
| HENRY D. SAHAKIAN, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

<u>**MEMORANDUM OPINION**</u>[1]

Before the Court are the Defendants' Motions to Dismiss the Complaint filed by JNA-1 Corporation (the "Plaintiff"). For the reasons set forth below, the Court will grant these motions.

I.   <u>BACKGROUND</u>

The Plaintiff is a Pennsylvania corporation. Defendant Uni-Marts, LLC (the "Debtor") is a Pennsylvania limited liability company with its principal place of business in State College,

_____

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . . ." Fed. R. Bankr. P. 7052(a)(3). Accordingly, the Court makes no findings of fact and conclusions of law but accepts the averments of the Complaint as true in considering the Defendants' Motions to Dismiss.

Pennsylvania, which operates a chain of company-owned and franchise-operated convenience stores throughout the northeastern United States.  Defendant Henry D. Sahakian ("Sahakian") is a manager and president of the Debtor.

On May 29, 2008, the Debtor, and some of its affiliates,[2] filed chapter 11 petitions for relief under the Bankruptcy Code. Earlier, in late 2004, the Debtor offered for sale a number of its convenience stores.  The Plaintiff expressed interest in a store located in Harrisburg, Pennsylvania (the "Store") and received a Property Specific Package ("PSP") containing relevant financial information about the Store.  On March 3, 2005, the Plaintiff executed a Purchase and Sale Agreement ("PSA") for the Store.

Before closing on the sale of the Store, the Debtor provided the Plaintiff with "Financial Update Information" purporting to reflect the Store's "actual operating results" for calendar year 2004.  On July 6, 2005, the Plaintiff purchased the Store and acquired the Store's operating assets, as well as the real property on which the Store is located.  In addition, the Plaintiff and the Debtor executed a Trademark Licensing

---

[2] The Debtor's affiliates in the underlying bankruptcy case are Uni-Marts Ohio, LLC, Uni Realty of Wilkes-Barre, Inc., Uni Realty of Wilkes-Barre, L.P., Uni Realty of Luzerne, Inc., Uni Realty of Luzerne, L.P., and Green Valley National Accounts, LLC.

Agreement, Fuel Supply Agreement, Commodity Schedule, and Collateral Deposit Agreement (collectively, the "Contracts").

In early 2007, a number of entities and individuals who had purchased convenience stores from the Debtor filed a class action complaint (the "Class Action") against the Debtor alleging, inter alia, that the Debtor had omitted and misrepresented material facts in connection with the sale of its convenience stores. (See Compl. ¶¶ 2, 3, 25, 26, Alliance Trading, Inc. v. Uni-Marts, LLC, Case No. 11-Civ-2007 (Ct. Com. Pl., Luzerne County, Pa.).) The Plaintiff was a member of the Class Action.  On November 16, 2007, the state court approved the Amended Settlement Agreement and entered a Final Judgment and Order resolving all issues in the Class Action (the "Class Action Order").  (See Final J. & Order, Nov. 16, 2007, ¶¶ 3, 4, 13, 14.)  The Class Action Order provides that it (as well as the Release provisions of the Amended Settlement Agreement) expressly and permanently enjoins all Class Members from filing, prosecuting, or continuing all claims against the Defendants that are based upon or related to the claims asserted in the Class Action.  (See Final J. & Order, Nov. 16, 2007, ¶¶ 9, 13, 14, 18, 20.)  The Class Action Order also provides that it binds all Class Members, except those who properly and timely excluded themselves from the settlement. (Id. ¶¶ 7, 8.)  Those Class Members who opted out of the settlement are listed on an exhibit attached to the Class Action

Order, which does not list the Plaintiff.  (See Ex. to Final J. &
Order, Nov. 16, 2007.)

On December 4, 2008, the Plaintiff filed this adversary
proceeding alleging that the Debtor and Sahakian induced the
Plaintiff to purchase the Store and to enter into the Contracts
through either fraud or negligent misrepresentation.  In the
adversary complaint, the Plaintiff seeks rescission of the
Contracts, damages from Sahakian and the Debtor resulting from a
breach of good faith and fair dealing, and a declaration that
either the Debtor's estate has no interest in any insurance
covering the Plaintiff's claims or an equitable allocation of any
insurance in which the Debtor has an interest.

On December 30, 2008, the Debtor filed a Motion to Dismiss
the Complaint.  On January 2, 2009, Sahakian filed a Motion to
Dismiss the Complaint.  The Plaintiff opposes both motions.  The
matters have been fully briefed and are ripe for decision.


II.  <u>JURISDICTION</u>

       This Court has jurisdiction over this adversary proceeding
pursuant to 28 U.S.C. §§ 1334, 157(b)(2)(A), (B), (G), (O), &
(c)(1) (2006).


III. <u>DISCUSSION</u>

Sahakian moves for dismissal of Count II of the Plaintiff's

Complaint (Damages against Sahakian) on several grounds.  First, he argues that the claim is barred by the Class Action Order. Second, he argues that the Plaintiff has failed to state a claim against him, pursuant to Rule 12(b)(2) and (6) of the Federal Rules of Civil Procedure, which are incorporated by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.  Third, he argues that this Court lacks personal jurisdiction over him.  Fourth, he asserts that the claim was filed beyond the statute of limitations.  Finally, Sahakian asks the Court, utilizing its powers under section 105(a) of the Bankruptcy Code, to extend the automatic stay under section 362(a) of the Bankruptcy Code to bar the suit against him.

The Debtor also moves for dismissal of the claims against it on the ground that these claims are barred by the Class Action Order.  In addition, the Debtor claims that the Complaint was filed beyond the statute of limitations.  Lastly, the Debtor argues that the Complaint violates the automatic stay and therefore should be dismissed.

A.    Personal Jurisdiction

Sahakian moves to dismiss the Complaint against him for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).

1.    Standard on Rule 12(b)(2) Motion to Dismiss

"[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima

facie case of personal jurisdiction and . . . is entitled to have its allegations taken as true and all factual disputes drawn in its favor." <u>Miller Yacht Sales, Inc. v. Smith</u>, 384 F.3d 93, 97 (3d Cir. 2004).  The Court held no evidentiary hearing on the motion to dismiss.  Thus, it will base its decision on the allegations in the Plaintiff's Complaint.

> 2.   Personal Jurisdiction in Bankruptcy Court

Rule 7004(f) of the Federal Rules of Bankruptcy Procedure provides that:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 F. R. Civ. P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

Fed. R. Bankr. P. 7004(f).

Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure generally limits <u>in personam</u> jurisdiction of the federal courts over non-resident defendants to that which a court of general jurisdiction in the forum state would have.  However, this limitation does not apply where extra-territorial service of process is "authorized by a federal statute."  Fed. R. Civ. P. 4(k)(1)(C).  Bankruptcy Rule 7004(d), which allows nationwide service of process in bankruptcy cases, is just such a statute.

Nordberg v. Granfinanciera, S.A. (In re Chase & Sanborn Corp.),
835 F.2d 1341, 1344 (11th Cir. 1988) ("Bankruptcy Rule 7004(d)
provides for nationwide service of process and thus is the
statutory basis for personal jurisdiction in this case . . . ."),
rev'd on other grounds, 492 U.S. 33 (1989).

The Fifth Amendment Due Process Clause does circumscribe in
personam jurisdiction of the federal courts.  Id. at 1344.  It
imposes "a general fairness test incorporating International
Shoe's requirement that certain minimum contacts exist between
the non-resident defendant and the forum such that maintenance of
the suit does not offend traditional notions of fair play and
substantial justice."  Max Daetwyler Corp. v. Meyer, 762 F.2d
290, 293 (3d Cir. 1985) (quotations omitted) (citing
International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

However, in bankruptcy cases "the forum" is the United
States in general, not the particular forum state.  Klingher v.
Salci (In re Tandycrafts, Inc.), 317 B.R. 287, 289 (Bankr. D.
Del. 2004).  Accordingly, the Court will apply a "national
contacts" standard, and not merely a "Delaware contacts"
standard, in determining whether the Court's exercise of personal
jurisdiction over Sahakian is proper.

3.  Sahakian's Minimum Contacts

Where a non-resident defendant "purposefully directed his
activities at residents of the forum," his contacts with the

forum are sufficient to support personal jurisdiction in any "litigation [that] results from alleged injuries that arise out of or relate to those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quotations omitted).  A single transaction with the forum by the plaintiff will suffice.  See McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957).  The defendant's activity need not take place within the forum so long as it is "intentional conduct . . . calculated to cause injury" to the plaintiff within the forum.  Calder v. Jones, 465 U.S. 783, 791 (1984).  See also Burger King, 471 U.S. at 476 ("[W]e have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction . . . .").  However, "it is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).

In this case, the Plaintiff's Complaint alleges that "Defendant Uni-Marts, LLC is the Debtor in this bankruptcy case." (Compl. ¶ 2).  The Complaint further alleges that "Defendant Henry D. Sahakian is president of and a manager of the Debtor." (Compl. ¶ 3.)  Substantively, the Plaintiff alleges that "Sahakian directed and participated with and provided substantial assistance to the Debtor and others, pursuant to a common plan,

8

in procuring and breaching the Contracts and tortiously inducing Plaintiff and its principals to purchase the Store." (Compl. ¶ 30.)

Because the Plaintiff's Complaint contains no allegations regarding Sahakian's residence or domicile, Sahakian's minimum contacts must be analyzed as if he were a non-resident of the forum.[3] The Plaintiff alleges that Sahakian "purposefully directed his activities" at the Plaintiff, who resides in the forum, and that the current suit "arise[s] out of or relate[s] to those activities." See Burger King, 471 U.S. at 472. The essence of the Plaintiff's Complaint is that the Debtor provided false and misleading financial statements to the Plaintiff and the Plaintiff relied upon the documents in purchasing the Store, located in Pennsylvania. (Compl. ¶¶ 15-21.) Specifically, the Plaintiff alleges that certain sales documents failed to disclose key operating costs and reported artificially inflated sales figures in an effort to make the property appear more attractive, thus inflating the sale price. (Id. at ¶¶ 16-18.) The Plaintiff

---

[3]     The Plaintiff argues in its brief that Sahakian is a resident of the United States. In support of this, the Plaintiff cites to Sahakian's biographical entry from Wikipedia and the Debtor's Statement of Financial Affairs, which reflects a mailing address for Sahakian in State College, Pennsylvania. However, the mailing address listed on the Schedules is a post office box, which is insufficient to establish Sahakian is a resident of the United States. Furthermore, the Wikipedia entry is not of record in this case and is probably not admissible as evidence. See Fed. R. Evid. 802.

alleges that Sahakian "directed" this activity and "provided substantial assistance to" the Debtor in perpetrating the fraud. (Id. ¶ 30.)

While merely entering into a contract with a forum resident may not alone establish minimum contacts, the "real object of the business transaction" including the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" may establish minimum contacts. Burger King, 471 U.S. at 479. Here, Sahakian allegedly had extensive contacts with the United States in order to effectuate the sale of the Store and remained engaged through the executory Contracts related to the sale. The Plaintiff alleges that it received fraudulent store-specific profit and loss information in late 2004, at the direction of Sahakian. Later, the Plaintiff contends that Sahakian directed the Debtor to provide updated financial information which fraudulently reported actual operating results from 2004. Since the sale closing, the Plaintiff alleges that Sahakian has directed the Debtor to "repeatedly and materially breach[] its Contracts . . . by overcharging for fuel, failing to deliver fuel as required, and failing to pay or account for credits, discounts, rebates and other sums . . . ." (Compl. ¶¶ 24, 30.) Therefore, even if Sahakian was directing this activity from outside the United

10

States, the Plaintiff alleges that he directed tortious activities at the Plaintiff inside the United States.

Taking the Plaintiff's allegations as true, the Court concludes that they are sufficient to establish that Sahakian had minimum contacts with the forum.  Thus, the Court concludes that the Plaintiff has established that the Court has personal jurisdiction over Sahakian with respect to the claim raised in the Complaint.  See Burger King, 471 U.S. at 472.

### 4.   Fair Play and Substantial Justice

The exercise of personal jurisdiction must also comport with "traditional notions of fair play and substantial justice." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998). "The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy." Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir. 1993). See also Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 114 (1987) ("When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant.").

Because the Plaintiff has made a prima facie case of minimum contacts, the burden shifts to Sahakian to "present a compelling case that the presence of some other consideration should render

jurisdiction unreasonable." <u>Grand Entm't Group</u>, 988 F.2d at 483
(quotations omitted).

> [T]he Court must consider the following
> factors: (1) the burden on [Sahakian] of
> litigating in the United States; (2) the
> interest of the United States in adjudicating
> the dispute; (3) the Plaintiff's interest in
> obtaining the relief sought; (4) the
> interstate judicial system's interest in
> obtaining the most efficient resolution of
> controversies; and (5) the shared interest of
> the several States in furthering fundamental
> substantive social policies.

<u>Astropower Liquidating Trust v. Xantrex Tech., Inc. (In re
Astropower Liquidating Trust)</u>, 335 B.R. 309, 321 (Bankr. D. Del.
2005).

Sahakian first argues that he "will be burdened unreasonably
by having to defend Plaintiff's lawsuit in Delaware [that he]
could not have reasonably anticipated being hailed [sic] before a
Delaware bankruptcy court to adjudicate tort claims originating
in Pennsylvania." He argues that it is unreasonable to litigate
this suit in Delaware, but perfectly reasonable to litigate in
Pennsylvania. Sahakian's argument fails to recognize that the
relevant forum is the United States and that the inquiry is
whether it is burdensome to litigate in the United States as a
whole. Sahakian has failed to demonstrate why litigation in the
United States would be burdensome.

Sahakian next argues that "regardless whether the forum is
the United States or Delaware, neither has a genuine interest in

adjudicating . . . a garden variety state tort law action between two non-debtors." This argument is similarly misplaced. The Debtor is a named party to the suit and its potential liability for indemnification of Sahakian may impact the Debtor's estate. The United States has an interest in the efficient and orderly administration of the Debtor's estate. Adjudication of state law claims brought by a resident of the forum against a non-resident does not, by itself, offend traditional notions of fair play and substantial justice.

Finally, Sahakian argues that although the Plaintiff has an interest in obtaining relief, it "has not shown that relief is available only in this Court as opposed to . . . a Pennsylvania court . . . ." Sahakian cites no support for this novel proposition. Again, the forum at issue is the United States, not the state of Delaware. A plaintiff frequently has a choice of forum and venue in litigation. Due process does not require a showing that a plaintiff is unable to seek relief in the universe of other available forums to permit a plaintiff to proceed in its chosen forum. It only requires that the exercise of jurisdiction by the chosen forum will not "offend traditional notions of fair play and substantial justice." Meyer, 762 F.2d at 293.

Sahakian has failed to carry his burden of establishing that the exercise of jurisdiction over him by this Court offends traditional notions of fair play and substantial justice. Thus,

the Court will deny Sahakian's motion to dismiss for lack of personal jurisdiction.

   B.   <u>Statute of Limitations</u>

   The Debtor and Sahakian both move to dismiss the Complaint for failure to bring the action within the time allowed by the statute of limitations.  In Pennsylvania,[4] the statute of limitations for tort claims is two years.  42 Pa. Cons. Stat. Ann. § 5524(7) ("The following actions and proceedings must be commenced within two years: . . . .  (7) [A]ny other action or proceeding to recover damages for injury to person or property

---

   [4]  In deciding which state laws are applicable in the dispute, this Court applies the choice of law rules of the forum state.  <u>Pickett v. Integrated Health Servs., Inc. (In re Integrated Health Servs.)</u>, 304 B.R. 101, 106 (Bankr. D. Del. 2004), <u>aff'd</u>, 233 Fed. Appx. 115 (3d Cir. 2007).  Delaware courts apply the "most significant relationship test" as outlined in the Restatement (Second) of Conflict of Laws.  <u>Id.</u> (<u>citing</u> <u>Edelist v. MBNA Am. Bank</u>, 790 A.2d 1249, 1255-56 (Del. Super. Ct. 2001)).  In a tort action, the "most significant relationship test" identifies which state has the most interest in a particular tort claim by analyzing the following factors: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.  <u>Travelers Indem. Co. v. Lake</u>, 594 A.2d 38, 47 (Del. 1991) (<u>quoting</u> Restatement (Second) of Conflict of Laws § 145(2)).  Here, Pennsylvania has the most significant relationship to the Plaintiff's claim against Sahakian.  The injury and the conduct causing the injury occurred in Pennsylvania.  The Store is located in Pennsylvania.  The Plaintiff and the Debtor are Pennsylvania corporations, and Sahakian is the president and a manager of the Debtor.  The relationship between the Plaintiff, Sahakian, and the Debtor concerns the sale of the Store and the Contracts related to the operation of the Store.  Therefore, the Court concludes that Pennsylvania law applies.

14

which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud").

The discovery rule, however, provides an exception to the two-year statute of limitations for fraud.  "[U]nder Pennsylvania law, when the underlying cause of action sounds in fraud, the discovery rule tolls the statute of limitations 'until the plaintiff learns or reasonably should have learned through the exercise of due diligence of the existence of the claim.'" Roberson v. Cityscape Corp. (In re Roberson), 262 B.R. 312, 323 (Bankr. E.D. Pa. 2001) (quoting Beauty Time, Inc. v. VU Skin Systems, Inc., 118 F.3d 140, 148 (3d Cir. 1997)).

The Federal Rules of Civil Procedure contemplate that the determination whether a claim is time-barred under the statute of limitations will typically be made after it is raised as an affirmative defense in the answer.  See Fed. R. Civ. P. 8(c)(1). See also Stanziale v. Nachtomi (In re Tower Air, Inc.), 416 F.3d 229, 242 (3d Cir. 2005) (noting that "affirmative defenses generally will not form the basis for dismissal under Rule 12(b)(6)").  Nonetheless, a claim may be dismissed under Rule 12(b)(6) if "the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994).  See also Davis v.

15

Grusemeyer, 996 F.2d 617, 623 n.10 (3d Cir. 1993) ("[T]he
applicability of the statute of limitations usually implicates
factual questions as to when plaintiff discovered or should have
discovered the elements of the cause of action; accordingly,
'defendants bear a heavy burden in seeking to establish as a
matter of law that the challenged claims are barred.'" (quoting
Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481, 498 (3d
Cir. 1985))), abrogated on other grounds by, Klehr v. A.O. Smith
Corp., 521 U.S. 179 (1997); Giusto v. Ashland Chem. Co., 994 F.
Supp. 587, 594 (E.D. Pa. 1998) ("Thus, a 12(b)(6) motion should
not be granted on limitations grounds unless the complaint
facially shows noncompliance with the limitations period.")
(quotations omitted).

In this case, the sale to the Plaintiff closed on July 6,
2005.  (Compl. ¶ 12.)  The instant adversary proceeding was filed
on December 4, 2008.  The Plaintiff's claim is based on alleged
false financial information provided by the Debtor and Sahakian,
which induced the Plaintiff to purchase the Store.  According to
the discovery rule, the statute of limitations begins to run once
"the plaintiff has discovered his injury or, in the exercise of
reasonable diligence, should have discovered his injury."
Giusto, 994 F. Supp. at 594.

The Debtor and Sahakian argue that, as a matter of law, the
Plaintiff either discovered, or should have discovered, its claim

in the eighteen months it operated the Store before December 4, 2006, which is two years prior to the filing of the Complaint. At a minimum, the Defendants argue that the Plaintiff should have known by August or September 2005, after having operated the store for thirty to sixty days, that the financial information it received prior to the closing was inaccurate.

The Court disagrees with the Defendants' argument.  The Complaint does not suggest, on its face, that the claim was brought outside the statutory period.  The Complaint does not mention when the Plaintiff discovered the existence of the claim. Nor does the Complaint contain sufficient facts to make a determination, as a matter of law, when the Plaintiff through the exercise of reasonable diligence should have discovered the existence of the claim.  Accordingly, it is inappropriate at this stage of the proceedings to dismiss the complaint as time-barred. See Roberson, 262 B.R. at 323 (declining to dismiss complaint as time-barred since complaint did not contain sufficient facts to permit the court to determine when plaintiff discovered, or should have discovered, existence of claim).  See also Guisto, 994 F. Supp. at 594 (same).

Accordingly, the Court will deny the Debtor's and Sahakian's Motions to Dismiss the Complaint for failure to bring the action within the time allowed by the statute of limitations.

C.    <u>Automatic Stay</u>

Both the Debtor and Sahakian seek to dismiss the action because, they assert, it is barred by the automatic stay. Specifically, the Debtor argues that the action against it is directly barred by the automatic stay.  Sahakian, as a non-debtor not protected by the stay, asks the Court to extend the stay to him and accordingly to dismiss the claim against him.

1.    <u>Action against Sahakian</u>

In general, only the debtor is afforded the protections of the automatic stay under section 362 of the Bankruptcy Code; conversely, third-parties do not receive the protection of the automatic stay.  <u>Ochs v. Lipson (In re First Cent. Fin. Corp.)</u>, 238 B.R. 9, 18 (Bankr. E.D.N.Y. 1999).  "As a consequence, it is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the debtor."  <u>McCartney v. Integra Nat'l Bank N.</u>, 106 F.3d 506, 509-10 (3d Cir. 1997) (citations and quotations omitted).

Nevertheless, courts may extend the automatic stay to non-debtor third-parties if "unusual circumstances" are present.  <u>Id</u>. at 510.  The Court of Appeals for the Fourth Circuit, in the seminal case on the issue, explained:

> [t]his "unusual situation," it would seem,
> arises when there is such identity between

18

> the debtor and the third-party defendant that
> the debtor may be said to be the real party
> defendant and that a judgment against the
> third-party defendant will in effect be a
> judgment or finding against the debtor.

A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999 (4th Cir.
1986).

Sahakian argues three "unusual circumstances" exist in this
case, which warrant extending the automatic stay to him.  First,
Sahakian argues that the Debtor must indemnify him for any
monetary damages he incurs in this suit and that, therefore, a
judgment against him is, in effect, a judgment against the
Debtor.  Second, Sahakian argues that he is integral to the
Debtor's reorganization efforts and that the time demands of the
suit will hinder the Debtor's reorganization.  Finally, Sahakian
asserts that any findings in the suit may bind the Debtor through
collateral estoppel.  The Court finds these circumstances are not
sufficiently "unusual" to justify an extension of the stay to
Sahakian.

It is true that the Court in A.H. Robins noted an
"illustration" of unusual circumstances warranting extension of
the stay is "a suit against a third-party who is entitled to
absolute indemnity by the debtor." Id. at 999.  See also, Am.
Film Techs., Inc. v. Taritero (In re Am. Film Techs., Inc.), 175
B.R. 847, 853 (Bankr. D. Del. 1994) (extending the automatic stay
to non-debtor directors and officers in part because "there is an

19

entitlement to indemnification between the debtor and its officers and directors"); Eastern Air Lines, Inc. v. Rolleston (In re Ionosphere Clubs, Inc.), 111 B.R. 423, 435 (Bankr. S.D.N.Y. 1990) (finding the chairman of the board of directors' indemnification rights intertwined his interests with those of the debtor, creating a situation where the debtor was the real party in interest), aff'd, 124 B.R. 635 (S.D.N.Y. 1991).

Yet, the purpose served by extending the stay to directors and officers indemnified by the debtor must be consistent with the purpose of the stay itself, that is, to "suspend actions that pose a serious threat to a corporate debtor's reorganization efforts." First Cent. Fin., 238 B.R. at 19. See also Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.), 115 Fed. Appx. 565, 570 (3d Cir. 2004) (not precedential) ("Rather, courts employ a broader view of the potential impact on the debtor. The standard for the grant of a stay is generally whether the litigation could interfere with the reorganization of the debtor.") (citations and quotations omitted).

> The broader rule here is that a debtor's stay may extend to a non-debtor only when necessary to protect the debtor's reorganization. The threatened harm may be to needed debtor funds (e.g., when non-debtors are entitled to indemnification) or personnel (e.g., when debtor needs the services of non-debtors facing crushing litigation). The question is whether the action against the non-debtor is sufficiently likely to have a "material effect upon . . . reorganization effort[s]," that debtor

20

> protection requires an exception to the usual
> limited scope of the stay.

Gray v. Hirsch, 230 B.R. 239, 243 (S.D.N.Y. 1999) (quoting CAE
Industries Ltd. v. Aerospace Holdings Co., 116 B.R. 31, 34
(S.D.N.Y. 1990)).

Here, under the Debtor's Charter, the Debtor is required to
indemnify Sahakian for any losses related to actions taken in his
official capacity.  Hypothetically, the Plaintiff's suit against
Sahakian could result in losses to the estate.  However, the
Debtor maintains a D&O policy to cover losses of this type.  The
proceeds of said policy may not actually be part of the estate.
See First Cent., 238 B.R. at 17 ("'[D&O] insurance policies are
property of the estate . . . , but the question of whether the
proceeds are property of the estate must be analyzed in light of
the facts of each case.'" (quoting In re Sfuzzi, Inc., 191 B.R.
664, 668 (Bankr. N.D. Tex. 1996))).  Given the relatively modest
size of the potential recovery in this adversary proceeding in
relation to the limits on the Debtor's D&O policy (and the fact
that any claim against the Debtor would be a pre-petition claim),
it is difficult to see how the Debtor would sustain any loss,
much less one that would materially impair its reorganization.

Sahakian's argument that the time demands of the suit will
hinder his ability to assist the Debtor in its reorganization
efforts is also unconvincing.  Certainly, diverting critical
management resources from the reorganization effort to litigation

21

may constitute "unusual circumstances" to justify extending the stay.  See Ionosphere Clubs, 111 B.R. at 435; Johns-Manville Corp. v. Asbestos Lit. Group (In re Johns-Manville Corp.), 26 B.R. 420, 426 (Bankr. S.D.N.Y. 1983) ("The massive drain on [key personnel's] time and energy at this crucial hour of plan formulation in either defending themselves or in responding to discovery requests could frustrate if not doom their vital efforts at formulating a fair and equitable plan of reorganization."), vacated in part by, 41 B.R. 926, 928 (S.D.N.Y. 1984).

In this case, however, the Debtor's chapter 11 case is small and relatively straightforward, unlike cases such as Johns-Manville or A.H. Robins, which involved many thousands of tort cases.  This case is not even a large or complex business reorganization.  The limited scope of this adversary action is unlikely to consume significant portions of Sahakian's time or energy.  Therefore, the time pressures of this suit do not constitute "unusual circumstances" justifying extension of the automatic stay to Sahakian.

Finally, Sahakian argues that a finding of liability against him may have a preclusive effect in a later proceeding against the Debtor.  Thus, he asserts that the Debtor will be prejudiced if the adversary proceeding continues, effectively destroying the protections of the automatic stay.  Some courts have found

collateral estoppel concerns may justify extending the automatic
stay to non-debtors.  See Am. Film Techs., 175 B.R. at 848
(extending the automatic stay to enjoin the prosecution of a
California state court action against non-debtor directors and
officers of the debtor due to collateral estoppel); Ionosphere
Clubs, 111 B.R. at 435 ("a finding of liability as to [the]
codefendants may be extended to [the Debtor], and collateral
estoppel may bar [the Debtor] from litigating factual and legal
issues critical to its defense").  But see W.R. Grace, 115 Fed.
Appx. at 569 n.4 (noting that it is "at least unclear" as to
whether collateral estoppel may impact a debtor based upon suits
against non-debtor directors and officers).

     In this case, the Court need not decide whether a judgment
against Sahakian could have a preclusive effect against the
Debtor in some future proceeding.  Here, the Debtor is a party to
the action already.  Furthermore, the action against the Debtor
for rescission is premised on the same legal and factual bases as
the claims against Sahakian.  Therefore, the Court finds that
there is no basis to extend the automatic stay to Sahakian and
will deny Sahakian's motion to dismiss the Complaint on this
basis.

          2.   Actions against the Debtor

     The Plaintiff seeks rescission or cancellation of the pre-
petition executory Contracts with the Debtor and a judicial

determination that the proceeds of the Debtor's D&O insurance policy covering the claims against Sahakian are not property of the estate.  (Compl. ¶¶ 29, 35.)  The Debtor argues that these actions violate the automatic stay and should be dismissed.

Section 362(a) of the Bankruptcy Code provides that a bankruptcy petition:

> operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the case . . . or to recover a claim against the debtor that arose before the commencement of the case . . . [or] any act to obtain possession of property of the estate . . . or to exercise control over property of the estate . . . .

11 U.S.C. § 362(a) (2006).  "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors.  It stops all collection efforts, all harassment, and all foreclosure actions."  S. Rep. No. 95-989, at 54 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840.

Although the language of section 362(a) suggests that the automatic stay operates against all proceedings, the majority of courts hold that "the Code implicitly permits the filing of suit in the bankruptcy court against a debtor without violating the automatic stay."  Nat'l City Bank of Minneapolis v. Lapides (In re Transcolor Corp.), 296 B.R. 343, 358 (Bankr. D. Md. 2003).

See also Civic Ctr. Square, Inc. v. Ford (In re Roxford Foods, Inc.), 12 F.3d 875, 878 (9th Cir. 1993) ("[T]he automatic stay [is] inapplicable to a suit commenced in the same court where the bankruptcy was pending."); Prewitt v. N. Coast Vill., Ltd. (In re N. Coast Vill., Ltd.), 135 B.R. 641, 644 (B.A.P. 9th Cir. 1992) ("[W]e conclude that the automatic stay does not apply to proceedings against the debtor in home bankruptcy court . . . ."); J.T. Moran Fin. Corp. v. Am. Consol. Fin. Corp. (In re J.T. Moran Fin. Corp.), 124 B.R. 931, 940 (S.D.N.Y. 1991) (holding that the filing of an adversary proceeding is "equivalent to the filing of claims against the estate and allowable under 11 U.S.C. § 501, despite the automatic stay"); Dibbern v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.), 325 B.R. 89, 97 (Bankr. S.D.N.Y. 2005)("Because [Plaintiff] sued on his prepetition claims in this Court, his assertion of those claims here was not violative of the automatic stay provisions of Bankruptcy Code sections 362(a)(1) and (a)(3), as would have been the case if those claims had been asserted elsewhere."), rev'd on other grounds, 331 B.R. 93 (S.D.N.Y. 2005).  But see Healy/Mellon-Stuart Co. v. Coastal Group, Inc. (In re Coastal Group, Inc.), 100 B.R. 177, 178 (Bankr. D. Del. 1989) ("[Plaintiff] has a claim based on a state-law contract. . . .  It is the typical case which cannot be filed subsequent to a bankruptcy filing absent relief from stay for cause.").

The Court agrees with the reasoning of the majority of courts addressing the issue that the filing of an adversary proceeding against a debtor in the home bankruptcy court is equivalent to the filing of a proof of claim in the Debtor's bankruptcy case and, therefore, does not violate the automatic stay. Consequently, the Court concludes that the Plaintiff's filing of this adversary proceeding in this Court is not a violation of the automatic stay. Accordingly, the Court will deny the Debtor's motion to dismiss the Complaint on this basis.

D.    Sahakian's Motion to Dismiss for Failure to State a Claim

Sahakian also moves to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim.

1.    Rule 12(b)(6) Standard of Review

A Rule 12(b)(6) motion serves to test the sufficiency of the factual allegations in a plaintiff's complaint. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).

"In deciding a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff." Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004). See also Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (stating that the Supreme Court in Twombly "reaffirmed that, on a Rule 12(b)(6) motion, the facts alleged must be taken as true and a complaint

26

may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits").  All reasonable inferences are drawn in favor of the plaintiff.  <u>Kost</u>, 1 F.3d at 183.  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>abrogated on other grounds by</u>, <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 814-15 (1982). <u>See also</u> <u>Maio v. Aetna, Inc.</u>, 221 F.3d 472, 482 (3d Cir. 2000); <u>Rosener v. Majestic Mgmt., Inc. (In re OODC, LLC)</u>, 321 B.R. 128, 134 (Bankr. D. Del. 2005) ("Granting a motion to dismiss is a 'disfavored' practice . . . .").

        2.   <u>Rule 8(a) Standard of Review</u>

    Rule 8(a) of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  The statement must provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957).  Under Rule 8, a complaint "does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." <u>Twombly</u>, 550 U.S. at 555

27

(citations omitted).  In other words, "Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief. . . .  [W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."  <u>Phillips</u>, 515 F.3d at 232 (citing <u>Twombly</u>, 550 U.S. at 556 n.3).

       3.   <u>Failure to State a Claim against Sahakian</u>

The Plaintiff asserts that the Complaint states a claim against Sahakian under (1) the participation theory of liability for corporate officers and/or (2) a concerted tortious conduct theory.

       a.   <u>Participation Theory</u>

A corporation is a legal entity, acting through its agents. The corporate entity is "accountable for any acts committed by one of its agents within his actual or apparent scope of authority and while transacting corporate business."  <u>Am. Film Techs.</u>, 175 B.R. at 854.  In addition, corporate officers and directors may be held accountable personally for their tortious conduct.  <u>Loeffler v. McShane</u>, 539 A.2d 876, 878 (Pa. Super. Ct. 1988).  The Pennsylvania Supreme Court has recognized the participation theory of liability:

> The general, if not universal, rule is
> that an officer of a corporation who takes
> part in the commission of a tort by the
> corporation is personally liable therefor;

> but that an officer of a corporation who
> takes no part in the commission of the tort
> committed by the corporation is not
> personally liable to third persons for such a
> tort, nor for the acts of other agents,
> officers or employees of the corporation in
> committing it, unless he specifically
> directed the particular act to be done or
> participated, or cooperated therein.
>
> Liability under this theory attaches
> only where the corporate officer is an actor
> who participates in the wrongful acts.
> Therefore, corporate officers may be held
> liable for misfeasance . . . [but] may not be
> held liable for mere nonfeasance.

Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 90 (Pa. 1983)

(citations omitted).

In its Complaint, the Plaintiff alleges that the Debtor
fraudulently or through negligent misrepresentation induced the
Plaintiff to purchase the Store and execute the Contracts with
the Debtor.  (Compl. ¶¶ 28, 31.)  In support of the claim, the
Plaintiff alleges that:

- The Plaintiff signed a Purchase and Sale agreement for
  the Store "in reliance on a Property Specific Package
  ("PSP") . . . prepared and provided by the Debtor
  concerning the Store."  (Id. ¶ 8 (emphasis added).)

- "The Purchase and Sale Agreement sets forth the
  Debtor's representation . . . that 'To the best of
  Seller's knowledge, the store-level profit and loss
  information made available by Seller to Purchaser is
  true and correct in all material respects.'" (Id. ¶ 9
  (emphasis added).)

- "The Debtor provided 'Financial Update Information'
  concerning the Store, . . . which purports to show
  'actual operating results' for calendar year 2004."
  (Id. ¶ 10 (emphasis added).)

- "Thereafter, in reliance on the PSP and the Financial Update Information, Plaintiff purchased the Store." (<u>Id.</u> ¶ 11.)

- "In connection with the closing, Plaintiff entered into certain written contracts with the <u>Debtor</u> . . . ." (<u>Id.</u> ¶ 13 (emphasis added).)

- "The store-level profit and loss information <u>provided by the Debtor</u> concerning the Store contained material misrepresentations and omitted material facts and was materially false and misleading."  (<u>Id.</u> ¶ 15 (emphasis added).)

- "In particular, the financial information included in the PSP omitted important operating costs such as manager's salary, health and workers' compensation insurance expenses, various taxes, maintenance costs, and other expenses."  (<u>Id.</u> ¶ 16.)

- "In addition, the PSP and Financial Information Update falsely reported artificially inflated sales volumes for the Store.  Upon information and belief, the <u>Debtor</u> boosted sales by selling fuel at lower margins than represented; and sales actually made were improperly included in the sales figures reported . . . ."  (<u>Id.</u> ¶ 17 (emphasis added).)

The Plaintiff presented sufficient factual allegations to support the underlying tort claim against the Debtor.  However, the issue raised by Sahakian's motion to dismiss is whether the Plaintiff has properly supported its claim against him.

In Count II of the Complaint, the Plaintiff alleges that:

> 30.  Mr. Sahakian directed and participated with and provided substantial assistance to the Debtor and others, pursuant to a common plan, in procuring and breaching the Contracts and tortiously inducing Plaintiff and its principals to purchase the Store.

> 31.  As a proximate result, Plaintiff has suffered substantial monetary damages for which Mr. Sahakian is personally liable to Plaintiff.

(Compl. ¶¶ 30-31.)   The only other factual allegations which
mention Sahakian, directly or indirectly, are the following:

- "Defendant Henry D. Sahakian is president of and a
  manager of the Debtor."  (Id. ¶ 3.)

- "Defendants knew or should have known that the profit
  and loss information provided by the Debtor concerning
  the Store was materially incomplete, false, and
  misleading."  (Id. ¶ 22.)

- "Defendants knew or should have known that purchasers
  such as Plaintiff and its principals would rely to
  their detriment on the Debtor's misrepresentations."
  (Id. ¶ 23.)

It appears from the Complaint and the documents attached to it
that other officers (not Sahakian) executed the documents
relevant to the sale of the Store and the Contracts.  (Compl.,
Exs. A-C.)

    In its brief, however, the Plaintiff argues that Sahakian
"participated" in the tortious conduct allegedly perpetrated by
the Debtor simply by having knowledge of the tortious activities.
The Court disagrees.  "[A]n officer of a corporation who takes no
part in the commission of the tort committed by the corporation
is not personally liable . . . unless he specifically directed
the particular act to be done or participated or cooperated
therein. . . . [C]orporate officers and directors may not be held
liable for mere nonfeasance."  Wicks, 470 A.2d at 90 (emphasis
added).

    In this case, the Plaintiff has failed to allege any facts
suggesting that Sahakian actually participated in the Debtor's

alleged tortious activities.  Instead, the Plaintiff merely
asserts that Sahakian knew (or should have known) of the Debtor's
tortious conduct in selling the Store to the Plaintiff.  Mere
knowledge of the Debtor's activities, without some affirmative
act or participation is insufficient to state a claim under the
participation theory of liability.  See Wolf Designs, Inc. v. DHR
& Co., 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004) ("[M]ere
knowledge of tortious conduct by the corporation is not enough to
hold a director or officer liable for the torts of the
corporation absent other 'unreasonable participation' . . . .").
Cf. Wicks, 470 A.2d at 90 (denying motion to dismiss in action to
hold directors of land developer liable for selling plaintiffs
houses in a basin that floods where complaint alleged the
officers "actually knew that the location of [the development]
created . . . an unreasonable risk of the drainage problems which
occurred and that . . . they deliberately ordered the work to
proceed.").

     The Plaintiff argues, nonetheless, that the allegations that
(1) Sahakian is the president of the Debtor and (2) Sahakian
"directed and participated" in the Debtor's tortious activities
are sufficient to survive a motion to dismiss.  The Plaintiff
cites no authority to support such a novel proposition.  The
Supreme Court's recent decision in Twombly specifically
repudiates exactly this type of pleading:

> While a complaint attacked by a Rule 12(b)(6)
> motion to dismiss does not need detailed
> factual allegations, a plaintiff's [Rule 8]
> obligation to provide the 'grounds' of his
> 'entitle[ment] to relief' <u>requires more than
> labels and conclusions, and a formulaic
> recitation of the elements of a cause of
> action will not do</u>.

<u>Twombly</u>, 550 U.S. at 555 (emphasis added).

The Plaintiff responds by noting that "[i]t is entirely plausible that the president of Uni-Marts 'directed' the activities of that entity." It is conceivable that a corporate officer with the authority to manage and direct all the activities of the corporation may have directed a certain subset of the corporate activities. Missing from the Complaint, however, are any alleged facts that Sahakian <u>actually</u> exercised this authority and directed the Debtor to provide misleading financial information to the Plaintiff. The participation theory of liability does not hold that <u>all</u> corporate officers are liable for <u>all</u> tortious acts of the corporation; instead, an officer is liable only for acts he personally directed. <u>Chester-Cambridge Bank & Trust Co. v. Rhodes</u>, 31 A.2d 128, 131 (Pa. 1943).

The Plaintiff has failed to allege any facts establishing that Sahakian was personally involved in the Debtor's alleged fraud and misrepresentation in its purchase of the Store. "The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) [the cause of action] reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement'

possess enough heft to 'sho[w] that the pleader is entitled to relief.'"   Twombly, 550 U.S. at 557.   Accordingly, the allegations must plausibly suggest that the defendant engaged in the alleged conduct.   The Plaintiff's allegations in the Complaint are so vague and broad that they could easily apply to every director and officer in the corporation.   The Court concludes, therefore, that the Plaintiff's allegations do not possess the requisite heft to state a claim against Sahakian under the participation theory.

      b.   <u>Concerted Action</u>

     Pennsylvania also recognizes a tort for concert of action. <u>Koken v. Steinberg</u>, 825 A.2d 723, 731 (Pa. Commw. Ct. 2003).   The Restatement (Second) of Torts explains this theory:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement (Second) of Torts § 876 (2008).

The Plaintiff alleges that Sahakian "knew or should have known that the profit and loss information provided by the Debtor concerning the Store was materially incomplete, false, and misleading" and that the Plaintiff would rely to its detriment on the Debtor's misrepresentations.  (Compl. ¶¶ 22-23.)  Further, the Plaintiff's Complaint alleges that "Sahakian . . . provided substantial assistance to the Debtor and others."  (Id. ¶ 30.)  Accordingly, the Plaintiff argues that it has properly pled a claim under the Restatement (Second) of Torts, section 876(b), which requires both knowledge of the other actor's breach of duty and substantial assistance or encouragement.

The Plaintiff, however, provides no factual allegations to support this conclusory statement.  "Twombly requires that a complaint contain more than just conclusory reiterations of the statutory basis for a claim.  The plaintiff must put some 'meat on the bones' by presenting sufficient factual allegations to explain the basis for its claim."  Buckley v. Merrill Lynch & Co., Inc. (In re DVI, Inc.), 2008 WL 4239120, at *4 (Bankr. D. Del. 2008).  Accordingly, the Court finds that the Plaintiff has failed to state a claim under section 876(b).

The Plaintiff also alleges that Sahakian acted tortiously "pursuant to a common plan" which it argues states a claim under section 876(a).  (Compl. ¶ 30.)  Once again, however, the Complaint fails to contain any supporting facts beyond this

conclusory allegation.  Under Twombly, without more, the
Plaintiff fails to state a claim.

Therefore, the Court concludes that the Complaint contains
insufficient factual allegations, with respect to Sahakian, to
state a claim for concerted tortious activity under either
section 876(a) or (b) of the Restatement (Second) of Torts.  As a
result, Sahakian's motion to dismiss Count II on this basis will
be granted.

> E.   Release under the Class Action Order

Both the Debtor and Sahakian move for dismissal of the
Plaintiff's claims against them on the ground that these claims
are barred by the Class Action Order entered in 2007 as a result
of a settlement agreement between the parties that forever
resolved these claims.  The Plaintiff's current claims arise from
facts relating to and taking place prior to the parties'
settlement of virtually identical allegations that were asserted
against the Defendants in the Class Action.

The Plaintiff does not dispute that the Class Action
resulted in a settlement between the parties approved by the
final Class Action Order.  Instead, the Plaintiff asserts that
the Defendants failed to keep their promises under the settlement
and otherwise breached the agreement.  In addition, the Plaintiff
contends that it was not represented by counsel and "attempted,
albeit inartfully, to opt out of the settlement agreement at

36

issue." Moreover, the Plaintiff argues that the notice procedure
for the class action settlement was unfair.

"In deciding motions to dismiss pursuant to Rule 12(b)(6),
courts generally consider only the allegations in the complaint,
exhibits attached to the complaint, matters of public record, and
documents that form the basis of a claim." Lum v. Bank of
America, 361 F.3d 217, 222 n.3 (3d Cir. 2004); Pension Benefit
Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196
(3d Cir. 1993); In re Fruehauf Trailer Corp., 250 B.R. 168, 183
(D. Del. 2000). The Class Action Order is a matter of public
record.

It is well settled that a final judgment in a civil action
may be challenged on direct review but cannot be collaterally
attacked in a subsequent proceeding. See Chicot County Drainage
District v. Baxter State Bank, 308 U.S. 371, 376 (1940); Stoll v.
Gottlieb, 305 U.S. 165, 172 (1938) ("It is just as important that
there should be a place to end as that there should be a place to
begin litigation."). As a result, the Court cannot entertain
Plaintiff's challenge to the validity of the Class Action Order.
The state court specifically concluded, after holding a fairness
hearing, that there was adequate notice, a full and fair
opportunity to be heard, and fair consideration of all
objections. (See Final J. & Order, Nov. 16, 2007, ¶¶ 3, 4, 13,
14.) The Class Action Order provides that it and the Release

provisions set forth in the Amended Settlement Agreement,
incorporated by the Class Action Order, expressly and permanently
enjoin the Plaintiff from filing, prosecuting, or continuing all
claims against the Defendants that are based upon or related to
the claims asserted in the Class Action. (See Final J. & Order,
Nov. 16, 2007, ¶¶ 9, 13, 14, 18, 20.)  The Class Action Order
binds the Plaintiff, and the Court cannot consider the
Plaintiff's collateral attack on the final judgment.  (See id. ¶¶
7, 8; Ex. to Final J. & Order, Nov. 16, 2007.)

Similarly, under the Rooker-Feldman doctrine, the Court can
neither hear the Plaintiff's collateral attack on the state-court
judgment rendered before commencement of the adversary proceeding
nor review that judgment.  See Exxon Mobil Corp. v. Saudi Basic
Indus. Corp., 544 U.S. 280, 284 (2005).

Lastly, the Court cannot consider the Plaintiff's argument
that the Defendants breached the Amended Settlement Agreement
incorporated by the Class Action Order.  The Plaintiff's argument
is not part of its adversary complaint and appears for the first
time in its brief in opposition to the Motions to Dismiss.  But
even if the argument was part of the Complaint, the Court would
not consider it because under the terms of the Amended Settlement
Agreement and Class Action Order, the Court of Common Pleas of
Luzerne County is the exclusive venue to address such an
argument.  (See Final J. & Order, Nov. 16, 2007, ¶ 17 (the state

court reserved "continuing and exclusive jurisdiction of the Parties to the Amended Settlement Agreement, to administer, supervise, construe, and enforce the Amended Settlement Agreement in accordance with its terms.")

Therefore, the Court will grant both Defendants' Motions to dismiss the Plaintiff's complaint on this basis.


IV.    <u>CONCLUSION</u>

For the reasons set forth above, the Court will grant both Defendants' Motions to dismiss.

An appropriate Order is attached.


Dated: April 29, 2009                BY THE COURT:


                                     Mary F. Walrath
                                     United States Bankruptcy Judge